LOTTINGER, Judge.
This appeal presents a question of fact arising out of an automobile accident which occurred on October 20, 19SS on what is known as the Airline Highway in the vicinity of Baton Rouge, Louisiana.
According to the petition, at about 6 o’clock P.M. on the aforesaid day, Mrs. Andrews was driving a 1937 Ford automobile in a northerly direction in a four lane section of the highway when, after deciding to turn to her left to go in the opposite direction, she crossed from the outside lane to the inside lane and entered the gap in the neutral area where she stopped momentarily because of traffic coming from the opposite direction. It is further al *323 leged that the turn was made after she had seen that the way was clear, had given the proper signal and that she was completely stopped when she was struck from the rear by a truck operated by defendant James Monroe Price, which truck was covered by liability insurance with the other defendant, United States Fire Insurance Company. Damages are sought by Mrs. Andrews in the sum .of $85,000 and by her husband in the sum of $64,172.84.
The defendants in their answer admit the occurrence of the accident on the day and hour alleged but aver that it occurred as Price neared the gap or cross drive when Mrs. Andrews, who was proceeding in the outside or easternmost lane, turned to the left and in the path of the truck Price was driving in the inside lane or that nearest the neutral ground. It is set forth that the sole cause of the accident was the negligence of Mrs. Andrews in making a left turn in front of automobiles properly using the left or passing lane. Alternatively, contributory negligence is pleaded as a defense.
Following a lengthy trial on the merits judgment was rendered in favor of the defendant and against the plaintiffs who have prosecuted this appeal.
The testimony concerning the accident is, as might be expected, in conflict. Mrs. Andrews testified that she crossed from the right lane to the left lane some 225 to 250 feet before the point of collision after having looked to the rear and observed that the way was clear. She stated further that her lights were on and that she gave an arm signal. Her further testimony is that she was stopped “just a very few seconds” before she was hit. According to this lady’s deposition no part of her car extended into the northbound lane; however, on cross examination she stated that part of it “could have been” extending into the northbound lane.
Mrs. Andrews’ testimony is corroborated to some extent by that of an acquaintance, Thomas W. Patterson, who stated that on the evening of the accident he was entering the Log Cabin, a restaurant situated some 765 feet south of where the accident took place, when he happened to see the Andrews Ford stop in the cross drive. This witness did not see the accident but testified that he saw the Ford remain stopped in the cross drive “twenty or thirty seconds.”
It is questionable in our opinion as to whether Mr. Patterson could have recognized the plaintiff’s car as such as being stopped in the gap in the neutral area especially when this witness says “I just happened to glance as I started in the door (of the Log Cabin) and recognized the car.” Further especially in view of the fact that the accident occurred on October 20, at about 6 o’clock P.M.; that plaintiff’s car was a dirty green color; that most of the automobiles traveling on the highway had lights on and that he was a distance of 765 feet from where the accident took place.
The only other witness called on behalf of the plaintiff to testify with respect to the accident was one Jonas Hill, a man who lived nearby, and who arrived at the accident soon after its occurrence. He testified that he found 148 feet of skidmarks left by the truck in the inner lane. He did not make these measurements until “a day or two after the wreck” and did so out of curiosity. It is interesting to note that this witness further testified that he had again measured the skidmarks a day or two before the trial and, after admitting that they had disappeared, could give no plausible explanation as to how he could again measure them and arrive at exactly the same figure. This witness also testified that there were skidmarks left by the Ford from being shoved sideways and that they were approximately ten feet in length.
The defendant Price, on cross examination, related the following version of the accident:
“Q. You have previously told us about when you first saw Mrs. Andrews’ car before this collision. As I recall your previous testimony was *324 that you were following here in the right lane, — you were in the right lane and she was in the right lane? A. Yes, sir.
“Q. As you were heading north what did you do, tell the court what happened just before this collision took place? A. Well, I was driving my truck down the highway I’d say doing between thirty-five and forty miles an hour and I come up behind Mrs. Andrews, I looked over in my rear view mirror to see if my lane of traffic was clear behind me or on the side, and I pulled over in the left lane to pass her. I picked up speed to go around her and in the meantime,—
“Q. When you pulled over to pass her, did you at any time blow your horn before you attempted to pass her ? A. No, I did not, as far as I know.
“Q. Then what happened? A. Well, as I started to pass her, just before I got the front end of my truck by her rear bumper she pulled across the street in my path.
“Q. Before you got the front of your truck where? A, Just before I got the front bumper of my truck up even with her rear bumper.
“Q. And what happened? A. She pulled across the left hand lane of traffic in front of me.
“Q. And what did you do when that happened? A. Well, I hit my brakes as soon as possible and we had the calamity.
“Q. And then when you say you saw her crossing from the right lane to the left lane, how far were you from her? A. I was getting up bumper to bumper with her.
“Q. If she crossed according to what you say, how far did you travel after that before the collision took place? A. It took place then; in other words, from the time I saw her pulling across in my lane of traffic it wasn’t any further than thirty feet at the very tops; in other words, from the time I realized she was coming in front of me, — in other words, it was so close I couldn’t stay off of her. There wasn’t anything,I could do to prevent it.
“Q. Where did your truck and her car come together? A. In the left hand lane of traffic.
“Q. How much of her car had crossed the left hand lane of traffic? A. Well, she was sitting up straight across it whenever we made contact.
“Q. What part of her car did you hit? A. I hit the left rear fender on the left side.
“Q. You hit her on the side or to the rear? A. Yes, sir, the left rear side, right at the wheel.
“Q. Then you must have been straddling the left lane and right lane if you hit her at that point? A. No, sir.
“Q. Then you were in which lane when you hit her? A. I was in the left hand lane, just as close to the neutral ground as I could possibly get.
“Q. And it’s your testimony you struck her in the left side? A. Yes, sir, at the left rear wheel.”
The investigating police officer, Roger Melancon, placed the point of collision as being in the inside or left lane of travel and pinpointed it as being “fourteen feet west of the east edge of the Airline Highway, seven feet east of the neutral ground that divides Airline Highway, thirteen feet south of the south edge of neutral ground.” This witness stated that he did not recall skidmarks before the point of collision and found only “push marks” where both vehicles traveled six feet after the collision.
*325 As stated earlier the question is purely a factual one. Undoubtedly, the trial judge believed Price’s version, which we think is corroborated by officer Melancon, rather than Mrs. Andrews and there is nothing in the record which would convince us that he erred in doing so. We are of the same opinion as that of the Lower Court that Mrs. Andrews attempted to make a left turn from the outside land and immediately across the path of defendant’s overtaking vehicle and that the sole proximate cause of the accident was the negligence of Mrs. Andrews without first insuring that the changeover could be made safely and without interference to passing cars. We find no manifest error in the judgment appealed from and therefore same is affirmed.
Judgment affirmed.